

Case No:                          FEB - 2 2026



IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF
COLUMBIA CIRCUIT

## IN RE:

JOHN DOE and SIMILARLY SITUATED CITIZENS which include

Similarly situated "BOAT STRIKE" victims, Similarly situated "EPSTEIN"

and other assault victims, Similarly situated I.C.E. detained U.S. Citizen

victims, Similarly situated "ETHNICALLY CLEANSED" legal and

undocumented migrant victims, Similarly situated "AFFORDABILITY"

victims, et al

Petitioners

## PETITION FOR WRIT OF MANDAMUS and PROHIBITION

From U.S.D.C. District of Columbia cs# 1:25-cv-1229

John Doe, pro se

## TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF CONTENTS | ii |
| TABLE OF AUTHORITIES | iii |
| STATEMENT OF JURISDICTION | vi |
| RELIEF SOUGHT | vii |
| ISSUES PRESENTED | viii |
| FACTS NECESSARY TO UNDERSTAND ISSUE PRESENTED | 1 |
| REASONS WHY THE WRIT SHOULD ISSUE | 39 |

CONCLUSION                                                              56

## TABLE OF AUTHORITIES

1. 28 U.S.C. § 1651(a)                                               vi

2. Ex parte Peru, 318 U.S. 578, 586 (1943)                   vi,10

3. (28 U.S.C. § 1291)                                              vi

4. Firestone Tire & Rubber Co. v. Risjord (1984)             vi

5. Cohen v. Beneficial Industrial Loan Corp., 1949           vi

6. F.R.C.P. 54(b)                                                 vi,28

7. In re General Motors Corp. (1956)                           10

8. *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404 (1821) 11,24,35

9. 28 U.S.C. § 455                              21,23,38,42,43,44

10.     28 U.S.C. § 144                          21,23,38,42

11.     LCvR 40.1-40.10, 57.10-57.16                        22

12.     F.R.C.P.  60,65,52,59(e), and 54                    vii,47

13.     18 U.S. Code § 1506, 1519, 2071, 1001              22

14.     Marshall v. Marshall, 547 U.S. 293 (2006) citing Cohens v.

        Virginia, 6 Wheat. 264 (1821)                       24,35

15.     federal rule of civil procedure 15(a)(2)            29

16.     Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959)
        29,49,54

17.     Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962) 29,49,54

18.    Vasquez Perdomo v. Noem                                    15,33

19.    *NLRB v. Blevins Popcorn Co.,* 659 F.2d 1173, 1184 (D.C. Cir.

1981)                                                              37

20.    *Broderick v. Donaldson,* 437 F.3d 1226, 1234 (D.C. Cir. 2006)
       37
21.    In Re Sealed Case 77 F. 4th 815 - Court of Appeals, Dist. of

Columbia Circuit, 2023                                             37

22.    Shillitani v. United States, 384 U.S. 364, 370 (1966)     37

23.    Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)           37

24.    In re Sealed Case, 932 F.3d 915, 939 (D.C. Cir. 2019) 37

25.    Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S.

821, 829 (1994)                                                    37,38

26.    In re Fannie Mae Sec. Litig., 552 F.3d 814, 823 (D.C. Cir.

2009)                                                              37,38

27.    Landmark Legal Found. v. EPA, 272 F. Supp. 2d 70, 86 (D.D.C.

2003)                                                              38

28.    In re Fannie Mae Sec. Litig., 552 F.3d at 823   37,38

29.    United States v. United Mine Workers of Am., 330 U.S. 258,

304 (1947)                                                         37,38

30.    *Snyder v. Phelps,* 562 U.S. 443, 451-452, 131 S.Ct. 1207, 179

L.Ed.2d 172 (2011)                                                 41

31.    *United States v. Alvarez,* 567 U.S. 709, 751, 132 S.Ct. 2537, 183 L.Ed.2d 574 (2012) (ALITO, J., dissenting)     41

32.    *National Rifle Association of* America v. *Vullo,* 602 U. S. 175, 144 S.Ct. 1316, ___ L.Ed.2d ___ (2024)".\     41

33.    CHICAGO WOMEN IN TRADES v. Trump, 2025   42

34.    Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 850 (1988).     43

35.    *Hall* v. *Small Business Administration,* 695 F. 2d 175, 179 (5th Cir. 1983)     44

36.    Federal Rule of Civil Procedure 5 (FRCP 5)     45

37.    Federal Rule of Civil Procedure 79 (FRCP 79)     45

38.    28 U.S.C. § 956     45

39.    Federal Rule of Civil Procedure 83     46

40.    D.C. Local Rules (e.g., Local Rule 40.1(h) & Local Rule 72.1).     46

41.    F.R.C.P. 60     47

42.    *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)     55

43.    Section 3 of the 14th amendment     56

44.    1st amendment of the U.S. Constitution     56

45.    International Longshoremen's Association v. Philadelphia Marine Trade Association, 389 U.S. 64 (1967)     51

46.      In Schmidt v. Lessard, 414 U.S. 473 (1974)          51

## STATEMENT OF JURISDICTION

Under the All Writs Act, 28 U.S.C. § 1651(a),

The question is not whether "the typical appellate process" is available—it's

whether the typical appellate process is adequate for purposes of

mandamus analysis. The Supreme Court has instructed that mandamus

relief is appropriate in cases of "public importance and exceptional

character." Ex parte Peru, 318 U.S. 578, 586 (1943). This court lacks

jurisdiction of a NON final order or one without express finding even if

framed so. Federal appellate courts lack jurisdiction over non-final orders

because of the final judgment rule (28 U.S.C. § 1291), established by

cases like Firestone Tire & Rubber Co. v. Risjord (1984), which mandates

appeals only after final decisions, preventing piecemeal review; however,

exceptions like the Cohen collateral order doctrine (Cohen v. Beneficial

Industrial Loan Corp., 1949) allow appeals of crucial interlocutory orders

that resolve important issues unreviewable later, preventing irreparable

harm, though courts strictly interpret these exceptions. No exception exists

here. See also F.R.C.P. 54(b). Pursuant to a threat of repetitive violence
under guise of official conduct, plaintiff cannot serve an appellee in normal
appeals proceeding as explained below.

## RELIEF SOUGHT

The writ must be granted to compel the court to, prohibit censorship and
effectively censoring in violation of the 1st amendment below, prohibit
implementation of the dual unconstitutional policies of jurisprudence and
governance raised in the complaint to be determined by jury as to its
existence and implementation in this case below, prohibit those disqualified
from proceeding, prohibit defensive submissions under judicial function,
prohibit the invention of subject matter, file that which must be filed, rule on
pending motions, address the "remaining" claims of standing, remaining
parties, remaining legal claims, remaining equitable claims and otherwise,
clarify its order(s) and correct the abuses of discretion, compel jury trial as
demanded. The lower tribunal must be prohibited from all that effectively
denies due process, the ability to amend and the right to jury trial and must
be compelled to correct that which does, especially when resulting from
policy to be determined by jury as to its existence and implementation
below, not merely error.

## ISSUE PRESENTED

(1) Whether this court should prohibit the lower court from implementing or further implementation, under guise of mere error and mere abuse of discretion, in the lower court case the challenged overarching policy of jurisprudence and governance entitled "project 2025", left for jury determination as to its existence and implementation as defined by the plaintiff below.

(2) Whether this Court should direct the district court to rule on Doe's long-pending motions, remaining claims of standing, remaining legal claims first, remaining equitable claims second, remaining parties, and other requested relief as stated above, all matters of or related to matters of great public interest and of first impression to prevent prejudice to Doe and those similarly situated and or future class members and should require the resolution before further litigation proceeds on the merits.

(3) Whether this Court should direct the district court to stay this litigation pending final resolution of Doe's pending matters, including disposition of any subsequent petition for a writ of mandamus as the order is not final or appealable even though framed so.

## FACTS NECESSARY TO UNDERSTAND ISSUE PRESENTED

WHY THIS CASE IS OF GREAT PUBLIC IMPORTANCE AND MATTERS OF FIRST IMPRESSION

Pursuant to the Project 2025 policy as defined by the plaintiff in 1:25-cv-1229, in a patterned systemic course of conduct, defendants abolish the OPERATIONAL existence of the Constitution and reduce the constitutional rights or protections of plaintiff in that case JOHN DOE, similarly situated citizens of the United States, similarly situated "BOAT STRIKE" victims, similarly situated "EPSTEIN" and other assault victims, similarly situated I.C.E. detained U.S. Citizen victims, similarly situated "ETHNICALLY CLEANSED" legal and undocumented migrant victims, and similarly situated "AFFORDABILITY" victims, black, brown, women, lgbtq, the impoverished and other protected classes to the discretion of the confederate white supremacist republican party installed in all 3 branches as clearly defined in 1:25-cv-1229, not to investigate or determine whether a violation has occurred, but instead to whether they will ALLOW the right or protection freely given the white and wealthy.

1 of 58

Whistleblowers against the white and wealthy should be protected. The defendants arrested and prosecuted Doe with orchestrated probable cause and tampered evidence anyway. Altered transcripts are illegal and violate due process. The defendants allowed them and then concealed them anyway. Prosecuting someone twice for the same alleged crime is forbidden.  The defendants did it anyway. Sending someone to prison under a false identity is illegal.  The defendants did it anyway. Conspiring with white supremacist gang members to murder Doe is illegal.  The defendants did it anyway. Applying the law differently in Doe's cases than applied as established in the cases of the white and wealthy is forbidden. The defendants did it anyway. White government officials are not immune for acts of violence.  The defendants gave them immunity anyway. Concealing purported exonerating evidence is illegal.  The defendants refused them and concealed them anyway. Refusing to allow Doe to vindicate his rights by jury trial and obtain reparations for the injuries he obtained in surviving the attempted murder is illegal. The defendants did it anyway. Altering court records is illegal.  The defendants did it anyway. Killing people like Doe and "boat strike victims" without due process is illegal. You attempted to and did it anyway. "Slow walking" the release of the "Epstein files" is illegal.  The defendants did it anyway. Obtaining

political office by preying on "affordability victims" is improper.  The defendants did it anyway. Denigrating entire protected classes of people for the acts of individuals to purpose violation of that protection is illegal.  The defendants did it anyway.

The defendants impose authority through "installed white supremacist officials" to interfere and are protecting the powerful, white and wealthy and discarding as less than human, black, brown, lgbtq, women, the impoverished and other protected classes while using authority to impose false narratives of those "Epstein" victims, murdered "boat strike" victims, migrants, ALL people of color, "affordability" victims, this plaintiff and other similarly situated persons.

## SUMMARY

Plaintiff, John Doe, a former high positioned executive and 2015 Whistleblower was set to expose millions in fraud against a white and wealthy republican donor. The project 2025 republican government intervened and unlawfully arrested, prosecuted, and convicted the plaintiff more than once in violation of the Double Jeopardy clauses. Over 166

times by declining the proper exercise of jurisdiction over that which was factually invoked, defendants below and in these proceedings below, invented subject matter and usurped that which is not given. The defendants reduced the plaintiff's Constitutional guarantees to discretion. There was never a plan to allow the plaintiff due process, there was only a plan to violate his rights without expressing the violations on record up to kidnapping and 4 counts of attempted murder.    Defendants, spanning a decade, EFFECTIVELY:

1. Acted devoid of subject matter jurisdiction without explanation,
2. Violated the double jeopardy clause in more than one way without explanation rendering the plaintiff powerless,
3. Kidnapped and attempted to murder the plaintiff under guise of official conduct 4 times leaving the plaintiff permanently disabled without remedy in any branch of government both state and federal rendering the plaintiff powerless,
4. Effectively granted immunity to white government officials for acts of violence without explanation rendering the plaintiff powerless,
5. Violated the fundamental law in more than one way without explanation rendering the plaintiff powerless,

6. Abolished the operational existence of the Constitution without explanation rendering the plaintiff powerless,

7. Reduced fundamental rights to permission or discretion of white supremacist government officials in all 3 branches state and federal without explanation rendering the plaintiff powerless,

8. Overturned Supreme court precedent without expressing the violation on record without explanation rendering the plaintiff powerless,

9. Failed to act on jurisdiction properly invoked without explanation rendering the plaintiff powerless,

10. Discriminated against the non-white plaintiff in more than application of the law without explanation rendering the plaintiff powerless,

11. Executed functions of the 3 branches and agencies differently concerning the non-white plaintiff without explanation rendering the plaintiff powerless,

12. Repeated or concealed the conduct below without explanation as the invented subject matter that appears in the defensive submission under guise of judicial function were not the matters for which jurisdiction was invoked rendering the plaintiff powerless.

The last act of violence, solicited by government officials, at the hands of white supremacist gang members left the plaintiff permanently disabled while kidnapped in unlawful custody. All agencies have participated in or acted to conceal the complained of conduct. Plaintiff peacefully, diligently and repeatedly sought relief from the courts who continue to implement 1 or both of the dual unconstitutional policies raised but unaddressed below:

1. The defendant's overarching Project 2025 policy of governance and jurisprudence as defined by the plaintiff in the complaint (doc 1 1:25-cv-1229) below,

2. Protecting the integrity of the institutions even when integrity was lacking as raised in the clarification motion (doc 32 1:25-cv-1229) below.

Spanning a decade and over 166 counts of conduct evidenced in part by record presented below, the Plaintiff is made powerless in a patterned systematic course of discriminatory conduct by installed project 2025 loyalists to white supremacy and the leader of the white supremacist confederate republican party. Sufficiently similarly situated white persons were not treated the same. Defendants cannot explain their actions because they are illegal; they can only invent subject matter. The plaintiff

has pleaded carefully to protect witnesses, his family and himself under another raised but unaddressed claim of waiver of "identifying factual specificity" for certain defendants and sought preliminary injunction, t.r.o., and a protective order to compel specific defendants to not disclose plaintiff's identity to other defendants, and to prevent repeating the acts of violence under guise of official conduct up to or until an impartial adjudicator by order makes the conditions safe. Defendants CANNOT be served here or below for safety concerns. Those matters also remain evaded below. (see docs 1,2,3,4,6,8,9 1:25-cv-1229). Defendants previously executed jurisdiction when it was lacking, kidnapped and attempted to murder the plaintiff 4 times. The conduct was concealed by agencies, and remedy was made unavailable in all 3 branches state and federal without explanation rendering the plaintiff powerless.

Plaintiff has been subjected to implementation of the "project 2025 " policy for a decade, long before it was entitled so, recognized only as the "mandate for leadership". Plaintiff has defined the primary objective of defendants' overarching policy of governance and jurisprudence entitled "project 2025" simply as "abolition of the OPERATIONAL existence of the Constitution", "reducing the constitutional guarantees of black, brown, women, lgbtq, the impoverished and other protected classes to the

discretion of white supremacist officials in all 3 branches, not to investigate or determine whether a violation has transpired, but instead to whether they will ALLOW the right or protection freely given to the white and wealthy" (doc 1,16,29  1:25-cv-1229).  As delineated there, defendants have a plethora of tools, like judicially implemented here below, VAGUENESS, AMBIGUITY, SUSCEPTIBILITY TO MORE THAN ONE MEANING, MISREPRESENTATION, INNUENDO, WILLFUL IGNORANCE, and more available to implement such policy from positions of power while relying on those who respect the Constitution to do just that, in some cases "turning a blind eye". They prey on such loyalty to impose their will by unconstitutional means putting forth only the appearance of Constitutionality. Project 2025 judiciary dress unconstitutional conduct as mere error when it is not; it is implementation of unconstitutional policy. The Project 2025 executive dresses unconstitutional conduct as self-executed and authorized executive order or pronouncement for invented purpose when it is more; it is implementation of unconstitutional policy. The project 2025 legislature capitulates and provides power to abuse discretion by the other branches; it is implementation of unconstitutional policy. If all of the project 2025 government abuses discretion all the way to the Supreme Court while remedy is sought, where discretion reduces remedy to approximately 80

out of 8000 cases reviewed annually, there is no Constitution. Without remedy for violation, there is no constitutional right. While they "flood the zone" we chase the judiciary to correct or end that which must be ended to no avail as the damage is already done, now more than ever on a national scale. Plaintiff's standing below arose from being subjected to defendants' project 2025 policy spanning a decade.

The plaintiff intends to amend his complaint (even raising amendment as a ground in the complaint doc 1 1:25-cv-1229) and proceed to jury trial as demanded subsequent to his "remaining" claims of standing, remaining parties, remaining legal claims, remaining equitable claims and otherwise being disposed of, not merely alleging or captioning orders as "final or appealable" whilst leaving the plaintiff in procedural "limbo".   The lower court's order(s) are so intentionally unclear that it effectively denies fundamental rights, inter alia, due process, the right to a jury trial, and there is no other path for appeal because the matter is more than mere error, it is implementation of unconstitutional policy with the threat of repetition, threat of repeated violence, and a NON final order even though framed so. The lower court also refuses to file authorized pleadings and reduces pleadings subject to public scrutiny to discretion subsequently abused. The writ must be granted to compel the court to, prohibit censorship below, prohibit the

submission of defenses under judicial function, file that which must be filed,
address the "remaining" claims of standing, remaining parties, remaining
legal claims, remaining equitable claims and otherwise, clarify its order(s)
and correct the abuses of discretion, compel jury trial as demanded. In re
General Motors Corp. (1956) illustrates the principle that mandamus can be
used to prevent the effective denial of a fundamental right when other
remedies are unavailable. A writ of mandamus must issue as the judge's
effective denial of leave to amend amounts to a "usurpation of judicial
power" or a clear jurisdictional error, rather than a mere error in the
exercise of discretion. The Supreme Court has instructed that mandamus
relief is appropriate in cases of "public importance and exceptional
character." Ex parte Peru, 318 U.S. 578, 586 (1943).

The particular district judge(s) subject to mandatory recusal,
manipulated the legal process in order to deny jurisdiction over a matter of
first impression, an issue of great public interest that properly belongs to
the court, invented subject matter and usurped authority over it. Such order
is void ab initio as the district judge(s) ruled upon matters for which
jurisdiction was not invoked. This is not mere error. Nor is the order truly
final even though framed so. They relied upon the other co-equal
Constitutional judiciary to fall to custom or policy of refusing to overturn a

co-equal district judge and "protecting the integrity of the institutions" even when integrity is lacking. The American people are caught in between those who apply the law in favor of white supremacy and those who apply the law equally. This is a losing battle because those who apply the law in favor of white supremacy rely upon everyone else to apply the law equally. It falls on the appellate courts to restore the constitutional balance. When district courts fail to exercise powers and usurps that which is not given, it is incumbent on federal appellate courts to right the ship and ensure that the judiciary does not exceed its authority under Article III of the Constitution. "We have no more right to decline the exercise of jurisdiction, which is given, than to usurp that which is not given. The one or the other would be treason to the [C]onstitution." *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404 (1821).

## IMPORTANT FACTS

Plaintiff incorporates and realleges the preceding paragraphs.

Plaintiff limits the history of this case solely for the purpose of this petition and does not waive any fact or legal argument raised below. In summary, Plaintiff filed his complaint and supporting motions (docs

1,2,3,4,6,8,91 1:25-cv-1229) seeking urgent injunctive and declaratory relief and jury trial on 04/15/25. Plaintiff sought pseudonymity and T.R.O. to prevent escalation of the violence complained of engaged under guise of official conduct. The threat of violence remains. Plaintiff crafted his pleadings and this petition so that he, his family, and witnesses would be protected from retaliation before serving the complaint. Defendants previously invoked jurisdiction it was lacking, kidnapped and attempted to murder the plaintiff 4 times.

Plaintiff complained (doc 1 1:25-cv-1229) of an overarching unconstitutional policy of governance and jurisprudence entitled "project 2025". Plaintiff sued persons who identify with the current republican party and with ANY ties to said policy, not traditional constitutional republicans/ conservatives. Defendants and witnesses Timothy Kelly and Carl Nichols are tied to the project 2025 policy being "installed by" the alleged president Donald J. Trump. Plaintiff cannot distinguish at the outset which political appointees, regardless of which branch installed, will serve the alleged president over the Constitution pursuant to the project 2025 policy complained of. Indeed, a limited number of appointees are "holding the line" against defendants' lawlessness complained of across the country. Defendants Kelly, Nichols and an unknown "clerk", "intake clerk", "case

administrator" have not held the line, instead have implemented the project 2025 policy complained of in the proceedings below, engaging in a series of extrajudicial unconstitutional acts and scheme under guise of official conduct, interfering with the litigation, using authority to tyrannically impose the wrong facts and wrong laws, sealing records that should be public under guise of "requests to file", submitting argumentative responses to the complaint under guise of judicial orders, in complete defiance of the Honorable James Boasberg's administrative and pseudonymity motion orders, the Federal rules of civil procedure, controlling law and this court's local rules. Defendants and witnesses Kelly and Nichols ignore the precedent of clearly established law cited more than 66 times in the complaint, and 62 times on rehearing while applying those same laws in the cases of similarly situated white and wealthy persons when favorable. This is a common practice of project 2025 governance and jurisprudence. There is no law, only discretion; the OPERATIONAL existence of the Constitution is abolished without authority to do so. As made clear in the complaint, defendants' insurrection that commenced on 01/06/21 never ended and is being carried out from the inside of government under implementation of the unconstitutional policy entitled "project 2025", underlying the 8 causes of action raised in the complaint. There was no

plan involving the idea that this plaintiff would survive. The court below determined factual matters like these that should be left for the jury, framed the invented subject matter as issues of standing, framed the invented subject matter as if it was stated by the plaintiff when it was not in a situation where a repetitive threat of violence exists rendering the plaintiff powerless.

Plaintiff has defined the primary objective of defendants' overarching policy of governance and jurisprudence entitled "project 2025" simply as "abolition of the OPERATIONAL existence of the Constitution", "reducing the constitutional guarantees of black, brown, women, lgbtq, the impoverished and other protected classes to the discretion of white supremacist officials in all 3 branches, not to investigate or determine whether a violation has transpired, but instead to whether they will ALLOW the right or protection freely given to the white and wealthy". (doc 1 1:25-cv-1229).

Former 2015 whistleblower and Plaintiff John Doe's standing arose from being subjected to implementation of said policy at the state level and in part federally spanning a decade, in retaliation for complaining against a wealthy and white republican donor, resulting in ALL of his rights being

violated under guise of official conduct. Conduct which escalated to kidnapping under guise of official conduct and 4 counts of attempted murder under guise of official conduct, the last act at the hands of white supremacist gang members solicited by defendant government officials leaving the plaintiff permanently disabled. Where defendants in the first 3 attempts sought black and Latino gang members to murder Doe the would-be assassins made him aware of the sinister plan because of his character. Plaintiff, even after repeatedly being isolated, beaten, deprived of food and water for days, to his own detriment, foolishly believed in his constitutional rights and his ability to have those rights vindicated until his eyes opened on 12/20/20 surviving the attempted murder. Suspicion and knowing are 2 different things. The plaintiff now knows.

Plaintiff sought, at least, incidental relief for similarly situated persons and incorporated the ONGOING factual basis of hundreds of nationwide lawsuits filed and still being filed against the defendants as acts resulting from and in furtherance of said policy. Most recently at least 23 migrants that we know of have died in defendants' unmonitored custody, at least 170 U.S. citizens that we know of have been illegally kidnapped by defendants under the Supreme Court's recent determination in Vasquez Perdomo v. Noem that ONLY white citizens should not be racially profiled and

defendants are executing people of color entitled to the presumption of innocence without due process of law (docs 17-28 and 29 1:25-cv-1229). While evidence of those abused, raped, murdered, molested, kidnapped as a result of the project 2025 policy complained of will take time to surface, a scintilla of this conduct is captured and made public now. On January 7th 2026, Renee Good was executed in broad daylight and like in the case of the plaintiff, defendants raced to cover up the truth. If there was no video, Renee Good's family would face the same injustice alone, this plaintiff has fought for a decade despite seeing the truth with their own eyes. It's not merely murder; it is implementation of the project 2025 policy as defined by the plaintiff and remaining below for the jury to decide as to its existence and implementation.

https://www.americanimmigrationcouncil.org/blog/trump-deadlier-for-ice-detainees-than-covid-19-pandemic/

https://www.americanimmigrationcouncil.org/blog/supreme-courts-decision-racial-profiling-immigration-raids/

https://www.nytimes.com/2025/10/31/world/americas/un-us-military-boat-strikes.html

https://www.msnbc.com/rachel-maddow-show/maddowblog/pentagon-concedes-trump-admin-doesnt-know-s-killed-boat-strikes-rcna241170

https://www.washingtonpost.com/world/2025/10/31/united-states-boat-strikes-caribbean-trinidad/

https://www.justsecurity.org/107087/tracker-litigation-legal-challenges-trump-administration/

https://www.lawfaremedia.org/projects-series/trials-of-the-trump-administration/tracking-trump-administration-litigation

https://abcnews.go.com/US/minneapolis-ice-shooting-minute-minute-timeline-renee-nicole/story?id=129021809

Plaintiff sought to enjoin further implementation of the project 2025 policy and sought jury trial for reparations for his injuries. Plaintiff also challenged initial pleading requirements alleging defendants have "FORFEIT identifying factual specificity" resulting from their constant threats of violence under guise of first amendment protections against judges, lawyers, litigants and opposition. Doe properly sought recusal and revisiting of defendants and witnesses Kelly's and Nichols' orders that tantamount to factually and legally argumentative defenses to matters not

raised in the complaint entered under guise of judicial function (docs 16 and 29 1:25-cv-1229). Defendants are required to submit their arguments after being served, NOT as judicial orders.

In the Honorable Judge James Boasberg's 05/20/25 order he ORDERED that pursuant to the "expedited nature of the case" the pseudonymity motion was granted "subject to further review by the judge to whom this case is randomly assigned". In defiance of that order defendants and witnesses Kelly and Nichols delay, refuse to recuse even though recusal is mandatory, and on the face of the record appear to enter orders of dismissal but the orders deceptively merely "distantly resemble" some matters alleged, granting or denying relief wholly outside of the pleadings (docs 16,29). Defendant Trump gives himself purported authority without consent of the other branches and murders people of color entitled to the presumption of innocence. Much like Trump, Kelly and Nichols argued for and granted their own relief CONCEALING the kidnapping and attempted murder of this plaintiff and plaintiff's evidence of hundreds of similar acts spanning a decade, all tied to defendants' unconstitutional overarching policy of governance and jurisprudence entitled "project 2025".

WITH THE STROKE OF A PEN, Kelly, Nichols and countless project 2025 confederate white supremacist Republican officials in all 3 branches, spanning a decade, ILLEGALLY POINT AND CONTINUE TO POINT ALL OF THE WEAPONS OF THE GOVERNMENT designed to KILL at the peaceful Plaintiff's head, evading clearly established fundamental principles of law as determined by the United States Supreme Court. Principles for example concerning, inter alia, "lack of subject matter jurisdiction", "double jeopardy", "due process", "the right to seek redress", are evaded while freely and forcefully enforcing those laws in the cases of sufficiently similarly situated white and wealthy persons. How can an unlucky peaceful litigant defend himself when he allegedly draws the straws of white supremacist judiciary implementing an overarching secret white supremacist policy of governance and jurisprudence entitled project 2025? Where is the predictability of law when facing systematic government BULLYING? Is this not TERRORISM by JUDICIAL TYRANTS? The government is free to investigate, sue, charge and try anyone of a wrong, but they are not free to violate all clearly established law to save face when they are so wrong that they CONCEAL evidence, tamper with other evidence, kidnap, attempt to murder and collude with other project 2025 cohorts in the courts of review to do so. This is not what is meant by

"protecting the integrity of the judiciary". They are not free to beat and wear peaceful non-white litigants into submission.

Inter alia, the constitutionality of the project 2025 policy underlying the entire complaint and the challenge to pleading requirements concerning the forfeiture of "identifying factual specificity" were NOT considered at all when required to be determined by jury, and NOT with sufficiency to permit repleading even though the order was fashioned as "without prejudice". Subject-matter jurisdiction is lacking as to the matters ruled upon in the orders. The orders are void ab initio not voidable. Yet defendants and witnesses Kelly and Nichols interfere with litigation instructing the clerk to "close" the case.

In defiance of administrative orders 24-53 and 25-31 defendants and witnesses Kelly and Nichols and the unknown "clerk", "intake clerk", "case administrator" behind the scenes are playing "keep away" from the judge to whom this case was randomly assigned as ORDERED by the chief judge, from the assigned honorable motions duty Judges Chutkan, Moss, Mehta, assigned 04/01/25 thru 6/30/25 as ORDERED by the chief judge and, Cobb and Friedrich  assigned 08/04/25 thru 10/06/25 as ORDERED by the chief judge. Cm/ecf demonstrates Kelly's and Nichols interception of the case

long before assignment to motions duty in July 7th and October 6th. The memorandum opinion is dated 06/18/25. Plaintiff has complied with orders 24-53 and 25-31. Administrative orders are not "stand alone" or "in spite of" orders. They align with federal law, rules of procedure, and statutes like 28 U.S.C. § 455 and 28 U.S.C. § 144. Defendants believe the mandate of "avoid even the appearance of impropriety" means "act improper and hinder relief but don't let it appear on record".

In defiance of administrative order 25-54 defendants and witnesses Kelly and Nichols and the unknown "clerk", "intake clerk", "case administrator" behind the scenes are playing "keep away" from the Honorable Judge Cobb, assigned to emergency duty 10/25/25 thru 10/26/25 after the emergency motion was filed on 10/24/25. After contacting the marshal, a judge was not readily available. Plaintiff has complied with order 25-54. Administrative orders are not "stand alone" or "in spite of" orders. They align with federal law, rules of procedure, and statutes like 28 U.S.C. § 455 and 28 U.S.C. § 144. Defendants believe the mandate of "avoid even the appearance of impropriety" means "act improper and hinder relief but don't let it appear on record".

In clear acts of usurpation and defiance of the Federal Rules of civil procedure and this court's local rules (LCvR 40.1-40.10, 57.10-57.16) the unknown "clerk", "intake clerk", "case administrator" executes judicial function by construing authorized motions "for leave", and authorized motions under rules 60,65,52,59(e), and 54 (docs 17,18,19,20,21,22,23,24,25,26,27,28,29,30,31,32) as "requests for leave to file review" , discriminatorily by scheme refusing to file and failing to provide any authority, manipulating the public docket and feloniously altering, concealing, falsifying, court records subject to public scrutiny. (18 U.S. Code § 1506, 1519, 2071, 1001). Records that must be public are sealed under the guise of "requests for leave to file review". A "clear act of usurpation" could be grounds for a contempt of court charge in federal court if it involves disobedience of a specific and clear court order, or if it obstructs the administration of justice. Defendants believe the mandate of "avoid even the appearance of impropriety" means "act improper and hinder relief but don't let it appear on record".


In clear acts of usurpation Kelly, Nichols and other defendant and witness judges refuse to recuse. A federal judge has a ministerial duty to

recuse themselves in specific, enumerated circumstances where their impartiality is mandated by law to be questioned. This duty is absolute and not a matter of personal discretion in those particular situations. The primary statute governing this is 28 U.S.C. § 455, which states that a judge "shall disqualify himself" in any proceeding where their impartiality might reasonably be questioned. The other recusal statute is 28 U.S.C. § 144. "Clear acts of usurpation" can be grounds for contempt of court in federal court, provided the acts meet specific legal definitions of contempt, primarily involving disobedience of a court order or obstruction of justice. Defendants believe the mandate of "avoid even the appearance of impropriety" means "act improper and hinder relief but don't let it appear on record".

A federal judge's failure to exercise properly invoked jurisdiction is considered a usurpation of power. Kelly and Nichols illegally "seal" under the guise of "request for leave to file review" and falsify the record subject to public scrutiny without mentioning the unconstitutional project 2025 policy underlying the 8 causes of action in their "argumentative defenses" submitted under guise of judicial function. There is no mere claim of

"wrongdoing", or a mere stand-alone claim of "conspiracy" as they purport. Defendants and witnesses Kelly and Nichols state that defendants are merely loyal to project 2025, that project 2025 is a white supremacist policy and frame it as if the plaintiff stated so, but the plaintiff stated that defendants are white supremacists implementing the project 2025 policy. (doc 1 1:25-cv-1229). This concept is famously articulated in a statement by Chief Justice John Marshall: "We have no more right to decline the exercise of jurisdiction, which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution". Marshall v. Marshall, 547 U.S. 293 (2006) citing Cohens v. Virginia, 6 Wheat. 264 (1821). "Clear acts of usurpation" can be grounds for contempt of court in federal court, provided the acts meet specific legal definitions of contempt, primarily involving disobedience of a court order or obstruction of justice. Defendants believe the mandate of "avoid even the appearance of impropriety" means "act improper and hinder relief but don't let it appear on record".


An order (or more commonly, a law/statute) can be so vague it's deemed unconstitutional under the "void for vagueness" doctrine, violating

due process by failing to give fair notice or inviting arbitrary enforcement, effectively allowing officials (in this case the judiciary) to "usurp" judgment by acting without clear standards. This occurs when people "of common intelligence must necessarily guess at its meaning," preventing clear understanding of prohibited conduct and allowing for discriminatory application.  Plaintiff realleges and incorporates the allegations of all the prior filed motions (docs 1,3,4,6,7,8,9,10,11,12,13,16,17,18,19,20,21,22,23,24,25,26,27,28,29,30,31 ) the contents of which have been ARGUED instead of adjudicated and in part restricted from the public docket by the judiciary. Federal rules of procedure allow for the "striking" of documents while remaining viewable to the public. This is not that. When challenged, the subsequent orders are ambiguous, vague, and susceptible to multiple interpretations, hindering repleading, appeals, or original writ proceedings and jury trial.

Plaintiff Doe has gone to great lengths to draft his pleadings with sufficient factual allegations in support of his claims in the complaints and subsequent motions as well as sufficient rationale as to why providing "identifying factual specificity" was challenged. This federal question, among many, remains unanswered. Plaintiff Doe has gone to great lengths presenting matters of 1st impression or citing clearly established law as

determined by the United States Supreme court and enforced by the United States District Court District of Columbia in other cases. On 05/05/25 and 05/20/25, the honorable James Boasberg entered the only orders in these proceedings that are clear and tenable. Since then, witnesses and defendants in this case Kelly and Nichols refused to recuse even though mandatory and submitted defenses under judicial function. Whether already determined by clearly established law, questions of 1st impression, or factual matters to be determined by jury, factual matters to be accepted as true, factual matters that cannot, or otherwise, none of the federal questions for which jurisdiction was invoked as to the complaint and subsequent motions have been answered in a manner promoting due process and the demand for jury trial. Despite plaintiff's diligence he remains without notice as to why his claims remain without address yet the case is ordered closed based on conclusory orders that could only be derived from inconsistent misrepresented facts. There is no notice of exactly what those are either.

On 12/23/25 the honorable Judge Reyes entered another order permitting the witnesses and defendants Kelly and Nichols to enter those defenses under judicial function with no explanation, alleging, again, vaguely that *"something"* is baseless like Kelly's allegation of "*something*" is

a "wrongdoing" and Nichols' allegation of "*something*" is a "conspiracy", and *"something"* is "baseless" and "*something*" is "vexatious" that could only be derived from inconsistent misrepresented facts. Plaintiff has no clue, nor does any reader of what the "*something*" is. Plaintiff's claims and pleadings are NOT baseless, vexatious, and Kelly's and Nichols' conclusions can only rest upon factual matters for which jurisdiction was NOT invoked. To the extent that " some" facts were alleged in the order and memorandum (docs 14,15, minute orders dated 10/08/25, 12/31/25 1:25-cv-1229), in whole those versions were INVENTED only distantly resembling some matters alleged to deceive a reviewer. Ab initio, Kelly argues that it is alleged that project 2025 "perpetuates white supremacy", argues that his boss Trump and coconspirators are not liable for their acts proliferating plaintiff's injuries and, are merely loyal to project 2025, framing it as if the Plaintiff stated so, but the plaintiff stated that defendants are white supremacists implementing a policy entitled project 2025, identifying specifically how they secretly by scheme abolish the ability to vindicate rights or obtain remedy after causing the injury, incorporating the factual basis of every suit filed against the current administration. (doc 1 1:25-cv-1229). But project 2025 officials in all 3 branches tell Americans every day that their lived experiences aren't real, and abuse authority to impose

manufactured facts, relying and preying on those loyal to constitution to strictly comply with rules and custom.

A right or protection without remedy or method of vindication is no right or protection. Defendants have repeated the challenged conduct complained of hundreds of times since filing on 04/15/25. Since then, people have been killed, kidnapped, and more, because, like the Plaintiff, their constitutional rights have unconstitutionally been reduced to discretion of white supremacists as alleged in the complaint. This is more than merely judicial misunderstanding of the facts and law. This is policy in jurisprudence; one clearly defined in the complaint as "project 2025 "; the other, one district judge refusing to render another co equal district judge incorrect at the expense of the American people who are caught in between. Such orders rendered upon invented subject matter or reliant upon such prior order are void ab initio. Courts lack subject matter jurisdiction over matters rising from invented facts.

Under Federal Rule of Civil Procedure 54(b), a court determines there is "no just reason for delay" by EXPRESSLY stating this finding in a written order when directing the entry of a final judgment as to fewer than all claims or parties in a case. This determination is crucial for making such a partial judgment immediately appealable. No such finding appears in this

case file. Despite the orders of dismissal alleging "without prejudice" the plaintiff, pursuant to federal rule of civil procedure 15(a)(2) cannot replead because the matters within the complaint, specifically the challenge to the "unconstitutional project 2025 policy" underlying the 8 grounds in the complaint have NOT been determined by the jury and adjudicated, instead have been argued by defendants improperly under judicial function. Moreover, to the extent the plaintiff sought jury trial, the matters to be determined by jury were not. "When a case involves both legal and equitable claims, a court should order the issues so that the issues decided by a jury (the legal issues) come first." Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959) Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962). Had defendants not unlawfully interfered by submitting argumentative defenses under judicial function in 1:25-cv-1229 the jury would determine:

1. Whether defendants are white supremacists or at least have capitulated or abdicated authority to the leader of the white supremacists,

2. Whether Project 2025 is an "unconstitutional policy" implemented by defendants,

3. Whether the project 2025 policy as implemented by defendants reduces the Constitutional guarantees and protections of black,

brown, women, lgbtq, the impoverished and other protected classes

to the discretion of white supremacists in all three branches of

government both state and federal, not to determine or investigate

whether a violation has occurred but instead to whether they will

ALLOW those rights freely given the white and wealthy,

4.  Whether plaintiff's injuries resulted from implementation of the
    unconstitutional project 2025 policy,

5.  All other issues raised in the complaint.

No order exists in adjudication of these matters, yet the clerk is ordered to

close the case and ordered to conceal by scheme, subsequent pleadings.

These are my claims, and the court has a duty to adjudicate them.

The U.S. Court of appeals lacks jurisdiction of a non-final order

even when framed as final and appealable when it is not, there is no finding

to appropriate an interlocutory appeal, and the plaintiff cannot replead

because there is no adjudication of the challenged as unconstitutional

"project 2025 policy" underlying the 8 grounds within the complaint even

though defenses improperly submitted under judicial function are framed as

final and appealable and framed as a "standing" determination. Plaintiff has

a right to be PROPERLY NOTIFIED of determinations as to the matters HE

ALLEGED, not the vague conclusory matters purported and ARGUED instead of adjudicated by Kelly and Nichols. What is the rationale as to the courts' conclusions? What is the "something" that is allegedly baseless, and why is it so? Why are the clearly established stated laws or matters of 1st impression not valid? What is it that should be repleaded or appealed or challenged by mandamus? Why is the court determining matters that should be left for the jury (doc 31 1:25-cv-1229) ? Why is Judge Boasberg not overseeing contempt proceedings as to his orders (doc 30 1:25-cv-1229)? Under what authority does the court seal records under guise of "requests for leave to file review" (docs

17,18,19,20,21,22,23,24,25,26,27,28,29,30,31,32 1:25-cv-1229) ? Why are authorized pleadings challenging VOID orders and orders changing the plaintiff's responsibility nullified without explanation (docs 16,29 1:25-cv-1229) ? How many constitutional violations will occur because no judge will at least give the plaintiff adequate notice? Judge Reyes is applying the custom of declining to overturn a coequal district judge because the plaintiff is pro se without realizing they have egregiously violated due process but frames the minute order as agreement without explanation. The Plaintiff's claims are valid and deserve full and fair adjudication in the 1st instance, including further development of facts in the District Court who is in the best

position to do so by jury. More persons from protected classes will be injured in the same way as the Plaintiff, kidnapped and murdered under guise of official conduct as alleged in the complaint, as a result of implementing such custom and defendants Kelly and Nichols MUST NOT submit defenses under judicial function. All the while the plaintiff remains kidnapped, in imminent danger and illegally restrained from the only hope of specialized medical treatment. Judges swear allegiance to the Constitution, not other judges, nor the executive. This custom, like the project 2025 policy complained of that as of yet appears not in a judicial order, is unconstitutional in violation of, inter alia, fundamental due process, fundamental meaningful access to the courts, and hindering repleading, appeals, and the right to jury trial.

Judges cannot INVENT SUBJECT MATTER and require an appellate court to accept it as mere error. As is the case as alleged in the now dual rehearing motions (docs 16,29 1:25-cv-1229), if the original judge lacked subject matter jurisdiction to enter the order in the first place, the order is considered void ab initio (from the beginning), a nullity, and a second judge in the same court might treat it as such (i.e., ignore it) because it never had any legal effect. Kelly and Nichols have argued, not adjudicated, and Judge Reyes is aligning with the custom of not conflicting with alleged coequal

judges. The plaintiff and those similarly situated suffer while caught in between.

Again, most recently at least 23 migrants that we know of have died in defendants' unmonitored custody, at least 170 U.S. citizens that we know of have been illegally kidnapped by defendants under the Supreme Court's recent determination in Vasquez Perdomo v. Noem that ONLY white citizens should not be racially profiled and defendants are executing people of color entitled to the presumption of innocence without due process of law (docs 17-28 and 29 1:25-cv-1229). While evidence of those abused, raped, murdered, molested, kidnapped as a result of the project 2025 policy complained of will take time to surface, a scintilla of this conduct is captured and made public now. On January 7th 2026, Renee Good was executed in broad daylight and like in the case of the plaintiff, defendants raced to cover up the truth. If there was no video, Renee Good's family would face the same injustice alone this plaintiff has fought for a decade in spite of seeing the truth with their own eyes. It's not merely murder, it is implementation of the project 2025 policy as defined by the plaintiff.

The court has a duty to be transparent. What is the rationale as to the court's conclusions? What is the *"something"* that is allegedly baseless,

and why is it so? Why are the clearly established stated laws or matters of
1st impression not valid? What is it that should be repleaded or appealed or
challenged by mandamus? Why is the court determining matters that
should be left for the jury? Why is Judge Boasberg not overseeing
contempt proceedings as to his orders? Under what authority does the
court seal records under guise of "requests for leave to file review"? Why
are authorized pleadings challenging VOID orders and orders changing the
plaintiff's responsibility nullified without explanation? How many
constitutional violations will occur because no judge will at least give the
plaintiff adequate notice?

The Plaintiff should not be trapped between dual policies of
jurisprudence, one sinister, the other more custom, but both
unconstitutional where, inter alia, fundamental due process, fundamental
equal protection and fundamental meaningful access including the right to
jury trial is denied furthering the prior violations of the fundamental law
complained of spanning a decade. The plaintiff remains kidnapped with no
remedy or vindication, injured with no remedy or vindication, in imminent
danger with no remedy or vindication, denied the only medical treatment by
a specialist available with no remedy or vindication, while those similarly

situated suffer the same. This is complete lawlessness under guise of lawfulness.

Plaintiff has properly invoked jurisdiction of the courts but the courts appear to refuse to properly exercise it because project 2025 judiciary cleverly INTERCEPT the matters before reaching an impartial adjudicator spanning 10 years. This concept is famously articulated in a statement by Chief Justice John Marshall: "We have no more right to decline the exercise of jurisdiction, which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution". Marshall v. Marshall, 547 U.S. 293 (2006) citing Cohens v. Virginia, 6 Wheat. 264 (1821). "

Defendants prey on the policy of the Constitutional judiciary of protecting the integrity of the judiciary, prey on the policy of frowning upon alleged "judge shopping" while they "case shop" at the behest of their codefendants, prey on other judges giving due respect when they show none. Pursuant to the overarching unconstitutional project 2025 policy complained of defendants are reducing the plaintiff's Constitutional rights which include but are not limited to the right to jury trial, the right to due process and the right to seek redress to their discretion, not to determine

whether a violation has occurred, but instead to whether they will ALLOW those rights freely granted the white and wealthy, and deny them by scheme. Civil rights era discrimination never ended; defendants merely became cleverer in how they discriminate. Here they illegally use the power of the judiciary to do so when they should enter their arguments in reply once served. It is a severe usurpation of authority and a fundamental violation of due process for a defendant to use their position and power as a judge to preside over their own case and act adversely to the plaintiff. This scenario presents an extreme, non-waivable conflict of interest. In such an extreme and improper scenario, the action taken by the individual is a personal act in their capacity as a defendant (or a person attempting to subvert the legal process), not a legitimate exercise of judicial power. "Clear acts of usurpation" can be grounds for contempt of court in federal court, provided the acts meet specific legal definitions of contempt, primarily involving disobedience of a court order or obstruction of justice.

Plaintiff sought civil contempt below which remains. A civil-contempt proceeding requires: "(1) issuance of an order; (2) following disobedience of that order, issuance of a conditional order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant party purges itself of contempt by complying with prescribed

purgation conditions; and (3) exaction of the threatened penalty if the

purgation conditions are not fulfilled." *NLRB v. Blevins Popcorn Co.,* 659

F.2d 1173, 1184 (D.C. Cir. 1981). The violation must be proven by clear

and convincing evidence. *Broderick v. Donaldson,* 437 F.3d 1226, 1234

(D.C. Cir. 2006).  See In Re Sealed Case 77 F. 4th 815 - Court of Appeals,

Dist. of Columbia Circuit, 2023. (doc 30 1:25-cv-1229).

"[C]ourts have inherent power to enforce compliance with their lawful

orders through civil contempt." Shillitani v. United States, 384 U.S. 364, 370

(1966); see Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). Civil

contempt will lie where "the putative contemnor has violated an order that is

clear and unambiguous, and the violation [is] . . . proved by clear and

convincing evidence. In re Sealed Case, 932 F.3d 915, 939 (D.C. Cir.

2019).  The aforementioned orders, laws, and rules are clear and meet

both standards and need no further explanation.

Civil contempt sanctions are appropriate to "coerce the defendant into

compliance with the court's order, or compensate the complainant for

losses sustained." Int'l Union, United Mine Workers of Am. v. Bagwell, 512

U.S. 821, 829 (1994) (cleaned up); see In re Fannie Mae Sec. Litig., 552

F.3d 814, 823 (D.C. Cir. 2009) ("The sanction was a proper exercise of the

district court's contempt power because it coerced compliance with the

stipulated order and compensated the individual defendants for the delay

they suffered."). A court may also award attorneys' fees and expenses.

Landmark Legal Found. v. EPA, 272 F. Supp. 2d 70, 86 (D.D.C. 2003).

Here, the Court below should impose a civil contempt sanction "calibrated

to coerce compliance" with the order, laws, and rules. In re Fannie Mae

Sec. Litig., 552 F.3d at 823; see United States v. United Mine Workers of

Am., 330 U.S. 258, 304 (1947) (in fixing a civil contempt sanction, the Court

should "consider the character and magnitude of the harm threatened by

continued contumacy, and the probable effectiveness of any suggested

sanction in bringing about the result desired."). Defendants did kidnap and

attempted to execute the plaintiff 4 times, a U.S. citizen, without jurisdiction,

without due process of law and are MORE THAN publicly kidnapping both

citizens and non-citizens and executing persons of color AND protesters

entitled to the presumption of innocence without due process of law.

Defendants should not be privy to the power of the judiciary or clerk's

ministerial authority to CONCEAL and EFFECTUATE the underlying

unconstitutional PROJECT 2025 policy. NO JUDGE whose impartiality is

already reasonably in question to the already submitted 28 U.S.C. § 455

and 28 U.S.C. § 144 affidavit should oversee this petition, the complaint

and contempt proceedings sought below. The lower court must be compelled to rule on all pending matters and all requested relief above.

## REASONS WHY THE WRIT SHOULD ISSUE

Plaintiff incorporates and realleges the preceding paragraphs.

The writ must be granted to compel the court to,

1. prohibit censorship and effectively censoring in violation of the 1st amendment below,

    Plaintiff realleges and incorporates the preceding paragraphs.

    The First Amendment protects the right to petition the government, which includes a right of initial access to the judicial forum (i.e., the ability to file a lawsuit). Plaintiff has complied with the rules, but the court does not like what the plaintiff is alleging even though true. Plaintiff is in compliance with the law. The court's role is to apply the law and ensure cases are handled efficiently and fairly, which requires adherence to established legal procedures. The judiciary cannot bully the plaintiff by censoring, refusing to file, refusing to adjudicate by inventing subject matter, vagueness, or any

other method, whether effectively doing so, because they don't want to address a truth, the matters are adverse to their personal interests, or when a pleading is truthful, lawful yet unorthodox.

A judge refusing to file on a public docket violates the First Amendment by infringing on the public's right of access to court records and the judge cannot overcome the strong presumption of openness by showing "overriding interests" requiring secrecy, refuses a narrowly tailored order, refuses a public hearing where the plaintiff public/press can challenge it, as the public's right to know is rooted in the First Amendment, though not absolute.

The Supreme Court recognizes a First Amendment right for the public and press to access court proceedings and records, stemming from the guarantee of free speech and a free press. Court records are presumed open; judges must provide strong reasons (compelling government interest, narrowly tailored) to seal them. Judges must apply a strict test: Is the closure necessary, is there no less restrictive alternative (like changing venue), and is the sealing order narrowly tailored?.

While the principles exist, federal courts have varied practices, and some judges seal records with less scrutiny, leading to "judicial secrecy". The plaintiff, media and public have a right to be heard on the question of closure, making a judge's ex parte (without public input) decision to seal suspect. A judge blocking public access to a filed document is presumptively a First Amendment issue, requiring strict justification, public notice, and an opportunity for challenge, rather than an arbitrary refusal." Freedom of speech serves many valuable purposes, but its most important role is protection of speech that is essential to democratic self-government, see *Snyder v. Phelps,* 562 U.S. 443, 451-452, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011), and speech that advances humanity's store of knowledge, thought, and expression in fields such as science, medicine, history, the social sciences, philosophy, and the arts, see *United States v. Alvarez,* 567 U.S. 709, 751, 132 S.Ct. 2537, 183 L.Ed.2d 574 (2012) (ALITO, J., dissenting)." "But government officials may not coerce private entities to suppress speech, see *National Rifle Association of* America v. *Vullo,* 602 U. S. 175, 144 S.Ct. 1316, ___ L.Ed.2d ___ (2024)". "[A] government entity's `threat of invoking legal sanctions and other means of coercion'against a third party `to achieve the suppression'of disfavored speech violates the First Amendment. " Chase

v. Morgan, 2025 "[T] he First Amendment prohibits government officials
from wielding their power selectively to punish or suppress speech,
directly or... through private intermediaries." CHICAGO WOMEN IN
TRADES v. Trump, 2025


2. prohibit those disqualified from proceeding and prohibit defensive
submissions under judicial function that effectively deny due process, the
ability to amend and the right to jury trial,

    Plaintiff realleges and incorporates the preceding paragraphs.

    Plaintiff submitted a motion pursuant to 28 U. S. C. § 455 and 28
U.S.C. § 144. Defendants and witnesses Kelly and Nichols ignored that the
complaint in defining the "project 2025 policy" explicitly referenced "loyalists
to Donald Trump and or white supremacy" who "are installed in positions of
government power". A writ of prohibition can be used in federal court to
compel a judge to stop presiding if they are disqualified. A motion to
disqualify has been denied and there's no other adequate remedy, as the
writ prevents a lower court from exceeding its jurisdiction, such as by
hearing a case with a biased or conflicted judge. It's an extraordinary
remedy for clear-cut situations, often used when a judge shows clear bias

or has an undeniable conflict, and it acts to prevent injustice before a final judgment, even one framed as final and appealable when it is not.

" In 1974 Congress amended the Judicial Code "to broaden and clarify the grounds for judicial disqualification." 88 Stat. 1609. The first sentence of the amendment provides: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U. S. C. § 455(a), as amended.

A violation of § 455(a) is established when a reasonable person, knowing the relevant facts, would expect that a justice, judge, or magistrate knew of circumstances creating an appearance of partiality, notwithstanding a finding that the judge was not actually conscious of those circumstances. Moreover, although the judgment in question had become final, the Court of Appeals determined that under the facts of this case, the appropriate remedy was to vacate the court's judgment. We granted certiorari to consider its construction of § 455(a) as well as its remedial decision. 480 U. S. 915 (1987)." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 850 (1988).

"The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has

knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible. The judge's forgetfulness, however, is not the sort of objectively ascertainable fact that can avoid the appearance of partiality. *Hall* v. *Small Business Administration,* 695 F. 2d 175, 179 (5th Cir. 1983). Under section 455(a), therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge." 796 F. 2d, at 802.

In a bizarre course of conduct, defendant and witness Kelly submitted his argumentative defense under judicial function ONLY as to defendant Trump and his cabinet; no one else. Defendants remain undisposed.

3. file that which must be filed that effectively deny due process, the ability to amend and the right to jury trial,

Plaintiff realleges and incorporates the preceding paragraphs.

Generally, a federal court clerk must file any document that is properly submitted. Clerks are ministerial officers, meaning their role is to accept

and process filings, not to make judicial determinations on the legal sufficiency or merit of a document like construing a document as a "request for leave to file review" effectively sealing the document without request to do so. Federal Rule of Civil Procedure 5 (FRCP 5) governs the serving and filing of all pleadings and other papers after the original complaint. It outlines how documents must be filed with the court clerk and served on other parties. A key aspect of modern Rule 5 is its accommodation of electronic filing (CM/ECF system), often mandated by local court rules, while requiring reasonable exceptions for those facing hardship (such as many self-represented, or *pro se*, litigants). Federal Rule of Civil Procedure 79 (FRCP 79) requires the clerk to maintain a docket and enter all actions and papers filed with the court. This implicitly mandates the acceptance and processing of documents. 28 U.S.C. § 956 provides that the clerk of each court and their deputies "shall exercise the powers and perform the duties assigned to them by the court". These assigned duties include accepting filings as outlined in the court's rules.

A judge generally cannot *effectively* seal a document without a formal court order, as sealing requires a specific judicial determination balancing public access against compelling interests, usually triggered by a motion to seal from a party or the judge's own initiative, and documented with

findings and reasons for secrecy, following strict procedural rules (like the
First Amendment's test for sealing). Sealing documents requires
overcoming a strong presumption of public access using a strict test: the
party seeking secrecy must show "overriding interests" (like protecting
trade secrets, privacy, or national security) requiring secrecy, and that the
sealing order is narrowly tailored to serve those interests, with no less
restrictive alternatives available, often balancing the First Amendment right
of access with specific harms, using a standard stricter than common law.

None of these criteria have been met.


4. rule on pending motions as those failures to do so effectively deny due
process, the ability to amend and the right to jury trial,

    Plaintiff realleges and incorporates the preceding paragraphs.

Judges have a duty to rule because rules (federal and local) mandate
action and resolution, preventing undue delay. Federal Rule of Civil
Procedure 83 D.C. Local Rules (e.g., Local Rule 40.1(h) & Local Rule
72.1).

See (docs 17,18,19,20,21,22,23,24,25,26,27,28,29,30,31,32)

Amongst those pending motions is a motion submitted pursuant to F.R.C.P. 60. Plaintiff moved the lower court "to vacate and strike the "minute orders" entered by clerk in an unauthorized judicial capacity located in docket entries for documents 17,18,19,20,21, 22 and any other clerical "minute order" entered after the date of that motion" referencing also (docs 23,24,25,26,27,28,29,30,31,32). On 08/10/25, 08/22/25, 09/10/25, 09/13/25, 09/15/25, and 09/16/25 (docs 17,18,19,20,21,22) plaintiff submitted "Motions FOR LEAVE to supplement" and 2 related inquiries to the clerk. Prior to 09/10/25 the first 3 of such motions were docketed without issue. On 09/10/25 the 4th of such motions was improperly judicially construed by the docketing clerk as a "motion to supplement" instead of a "Motion for leave to supplement" and CONCEALED from the public docket by what appears to be both an unauthorized third party motion and unauthorized judicial act of the clerk entitled "request for leave to file review". Upon alerting the clerk of this issue, the clerk doubled down on the unauthorized judicial function and altered the remaining docket entries in the same manner. They remain concealed from the plaintiff and the public docket. The clerks unauthorized submissions commenced upon the plaintiff submitting new facts regarding the " boat strike" executions of people of color without due process of law resulting in the deaths of

approximately 115 to 123 people since the campaign began in September 2025.

https://www.nytimes.com/2026/01/12/us/politics/us-boat-attacks-law.html

https://www.npr.org/2025/12/31/g-s1-104194/us-military-strikes-drug-boats-survivors

https://www.nytimes.com/interactive/2025/10/29/us/us-caribbean-pacific-boat-strikes.html

5. address the "remaining" claims of standing, remaining legal claims, remaining equitable claims and otherwise as those failures effectively deny due process, the ability to amend and the right to jury trial,

Plaintiff realleges and incorporates the preceding paragraphs.

Defendants and witnesses Kelly and Nichols implemented the project 2025 policy complained of, INVENTED SUBJECT MATTER and ruled upon it, demanding that it be reviewed merely as error instead of policy, the very same policy left for determination by the jury as to its existence and implementation. Even if this court permits a lower court judge to INVENT

SUBJECT MATTER and permits a lower court judge to REQUIRE an appellate court to accept the invented subject matter as mere error, pursuant to an unconstitutional policy intended to violate the plaintiff's fundamental rights including but not limited to due process, meaningful access and the right to seek redress, freedom of speech, the lower tribunal must address the "remaining" claims of standing, remaining legal claims, remaining equitable claims and otherwise as those failures effectively deny due process, the ability to amend and the right to jury trial.

Underlying the 8 causes of action is the "UNCONSTITUTIONAL POLICY ENTITLED PROJECT 2025" as defined in 1:25-cv-1229 and detailed conduct causing plaintiff injuries. This remains unaddressed. "When a case involves both legal and equitable claims, a court should order the issues so that the issues decided by a jury (the legal issues) come first." Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959) Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962). Had defendants not unlawfully interfered by submitting argumentative defenses under judicial function in 1:25-cv-1229 the jury would determine:

a. Whether defendants are white supremacists or at least have capitulated or abdicated authority to the leader of the white supremacists,

b. Whether Project 2025 is an "unconstitutional policy" implemented by defendants,

c. Whether the project 2025 policy as implemented by defendants reduces the Constitutional guarantees and protections of black, brown, women, lgbtq, the impoverished and other protected classes to the discretion of white supremacists in all three branches of government both state and federal, not to determine or investigate whether a violation has occurred but instead to whether they will ALLOW those rights freely given the white and wealthy,

d. Whether plaintiff's injuries resulted from implementation of the unconstitutional project 2025 policy,

e. All other issues raised in the complaint.

No order exists in adjudication of these matters, yet the clerk is ordered to close the and ordered to conceal by scheme, subsequent pleadings. These are my claims, and the court has a duty to adjudicate them.

6. clarify its order(s) and correct the abuses of discretion that effectively deny due process, the ability to amend and the right to jury trial,

Plaintiff realleges and incorporates the preceding paragraphs.

The petitioner has a clear and indisputable legal right to the relief requested. A fundamental due process right to notice and an opportunity to be heard (which the court's vague orders deny) constitute such a right. The lower court has a clear, plainly prescribed, and ministerial duty to perform the act in question. While judges have discretion in their rulings, the duty to issue a clear and lawful order that adheres to due process requirements is considered a ministerial function in extreme cases where the violation is egregious, or a "usurpation of power". While the court did not issue an injunction, it did deny more than one and did so by inventing subject matter then usurped jurisdiction over it framed as standing, followed by orders when challenged that are ambiguous, vague, and susceptible to multiple interpretations, hindering repleading, appeals, or original writ proceedings and jury trial. In International Longshoremen's Association v. Philadelphia Marine Trade Association, 389 U.S. 64 (1967) the Supreme Court emphasized that a judicial decree must be specific and not vague, noting that a party cannot be held in contempt for violating an order that does not clearly instruct them on what to do or not to do. In Schmidt v. Lessard, 414 U.S. 473 (1974) the Court held that injunctions must be specific to prevent uncertainty, as "vagueness... is inconsistent with due process".

This court lacks jurisdiction of a NON final order even if framed so. An ordinary appeal after a final judgment is an inadequate remedy for the harm caused by the vague order(s), because the vagueness of the order makes it impossible to proceed in the lower court or on appeal. The "vagueness doctrine" in law is a constitutional requirement that laws and, by extension, court orders, must be explicit enough to give a person of ordinary intelligence fair notice of what is required or prohibited. An order that fails this standard violates due process.

The Honorable Judge Reyes alleges vaguely that *"something"* is baseless like Kelly's allegation of *"something"* is a "wrongdoing" and Nichols' allegation of *"something"* is a "conspiracy", and *"something"* is "baseless" and *"something"* is "vexatious" that could only be derived from inconsistent misrepresented facts. Plaintiff has no clue, nor does any reader of what the *"something"* is. Plaintiff's claims and pleadings are NOT baseless, vexatious, and Kelly's and Nichols' conclusions can only rest upon factual matters for which jurisdiction was NOT invoked. To the extent that "some" facts were alleged in the order and memorandum (docs 14,15, minute orders dated 10/08/25, 12/31/25 1:25-cv-1229), the subject matter in the order and memorandum were INVENTED, imposing a requirement that does not exist that a reviewer accept them as mere error when they

are not, it is how defendants implement unconstitutional policy, only distantly resembling some matters alleged to deceive. This too is for a jury to determine.

7. compel jury trial as demanded.

Plaintiff realleges and incorporates the preceding paragraphs.

Plaintiff is not a professional attorney. Nor is he psychic. The lower court treats the plaintiff as if he is both. The lower court invents subject matter, "kicks the can down the road" up to the appellate court without ever addressing the true or "remaining" claims of standing, equitable claims, or legal claims attempting to lull the plaintiff into appealing a non final order or an order without express finding before entering a true final order with a FULLY DEVELOPED record with the facts determined by jury as demanded. The lower court hinders repleading and jury trial as intended while also hindering the ability to properly appeal by subjecting him to the "right for any reason" doctrine without due process of law. The plaintiff is not notified by order as to the matters he has alleged and is deprived of repleading, jury trial and perhaps "cure by verdict", as the trial

process itself, including the presentation of evidence and the jury's fact finding role of the case, which could "cure" the initial procedural errors in the paperwork if they exist. There is an array of rules of appellate review that "stack the deck" in favor of the appellee and the lower court's judgment. One such rule of review is "right for any reason," the rule that an appellee may defend a lower court's judgment on any grounds supported by the record—even grounds that the lower court rejected or ignored without the plaintiff being provided due process of law.

"When a case involves both legal and equitable claims, a court should order the issues so that the issues decided by a jury (the legal issues) come first." Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959) Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962). Had defendants not unlawfully interfered by submitting argumentative defenses under judicial function in 1:25-cv-1229 the jury would determine:

- f.  Whether defendants are white supremacists or at least have capitulated or abdicated authority to the leader of the white supremacists,

- g.  Whether Project 2025 is an "unconstitutional policy" implemented by defendants,

h. Whether the project 2025 policy as implemented by defendants reduces the Constitutional guarantees and protections of black, brown, women, lgbtq, the impoverished and other protected classes to the discretion of white supremacists in all three branches of government both state and federal, not to determine or investigate whether a violation has occurred but instead to whether they will ALLOW those rights freely given the white and wealthy,

i. Whether plaintiff's injuries resulted from implementation of the unconstitutional project 2025 policy,

j. All other issues raised in the complaint.

That the lower court determined jury matters and framed it as a "standing" issue violates the plaintiff's fundamental right to jury trial enshrined by the Seventh Amendment. The right to a jury trial is preserved for factual disputes within a case. A wrongful denial of standing prevents *any* determination on the facts by a jury, thereby infringing on the constitutional right to have those facts decided by a jury.  A prominent example of where the line between jurisdictional facts and merits facts was addressed by the Supreme Court is *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). In *Lujan,* the Court clarified the varying burden of proof for standing at

different litigation stages, and implicitly distinguished between the "facts" needed for jurisdiction versus those for the merits. Plaintiff tied his injuries and inability to obtain relief, reparations, or vindication to defendants' unconstitutional project 2025 policy as defined by the plaintiff. The lower court incorrectly framed its determination of the truth of these matters in the negative as standing.

The jury must determine the facts presented regarding implementation of the unconstitutional project 2025 policy as defined by the plaintiff below, including whether the plaintiffs right are violated because the Congress failed to remove the political disability of insurrection of the alleged president and as a result his political appointees are holding office without authority to do so pursuant to section 3 of the 14th amendment as raised below. The court would follow in matters of equity.


## CONCLUSION

The writ must be granted to compel the court to, prohibit censorship and effectively censoring in violation of the 1st amendment below, prohibit implementation of the dual unconstitutional policies of jurisprudence and governance raised in the complaint in this case below, prohibit those

disqualified from proceeding, prohibit defensive submissions under judicial function, file that which must be filed, rule on pending motions, address the "remaining" claims of standing, remaining parties, remaining legal claims, remaining equitable claims and otherwise, clarify its order(s) and correct the abuses of discretion, compel jury trial as demanded. The lower tribunal must be prohibited from all that effectively denies due process, the ability to amend and the right to jury trial and must be compelled to correct that which does, especially when resulting from policy, not merely error.

## CERTIFICATE OF COMPLIANCE

I certify that the forgoing motion was printed in a proportionally spaced font of 14 points and that, according to the word-count program in Microsoft Word, it is in compliance with D.C. Circuit Rule 18(b).

## CERTIFICATE OF SERVICE

I hereby certify that on this 21th day of January, 2026, I served the foregoing Petition for Writ of Mandamus and associated Appendix of Attachments in Support of Petition for writ of mandamus and prohibition via electronic or USPS mail on Respondent

The Honorable Judge Reyes 333 Constitution Avenue, N.W., Washington,

D.C. 20001

John Doe, petitioner

125cv1229@mail.com